## Case No. 13,926.

### The THOMAS MARTIN.

[3 Blatchf. 517; 19 Law Rep. 379; 35 Hunt. Mer. Mag. 446.] [1]

Circuit Court, S. D. New York.    Sept. 12, 1856.

COLLISION — RIGHT OF WAY — NAUTICAL RULES — LIGHTS—RACING.

1. It is a well-settled nautical rule, that when two sailing vessels are approaching each other, both having the wind free, the vessel on the larboard tack must give way, and each vessel must pass to the right; and the same rule governs vessels sailing on the wind, and approaching each other, when it is doubtful which one is to the windward.

2. It has long prevailed as a usage, and been recognized, to a certain extent, by the courts generally in this country and in England, that, both in narrow rivers and open seas, sailing vessels are not bound to carry lights when under way at night.

3. But, where two sailing vessels came into collision, while both were under way, approaching each other, on a night so overcast that a vessel without a light could not be seen at a distance of over half a mile, and the combined speed of the two vessels was ten or eleven miles an hour, and one of the vessels showed a light, which was seen by the other vessel some fifteen minutes before the collision, but the latter vessel showed no light: *Held,* on a libel by the former against the latter, the former having been lost by the collision, that, although the former was in fault, yet the latter was also in fault in not showing a light when she saw the other's light, and that the loss must be apportioned.

[Cited in Cooper v. The Saratoga, 40 Fed. 510.]

4. The latter was in fault for racing at the time with another vessel, at a rate of speed, and under circumstances, that were not justifiable, considering the character of the night.

[Cited in The Rhode Island, 17 Fed. 558.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, against the schooner Thomas Martin, by the owners of the schooner Industry, to recover damages for a collision which took place in the Atlantic ocean, several miles off the coast of New Jersey, in the neighborhood of Great Egg Harbor, by which the Industry was run down and became a total loss. The collision took place about nine o'clock at night, on the 14th of May, 1849, while the Thomas Martin was going down the coast, in ballast, bound for Norfolk, Va., and the Industry was coming up, heavily laden with corn, and bound for New Bedford, Mass. The district court dismissed the libel, on the ground that the Industry was in fault [case unreported], and the libellants appealed to this court.

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission. 19 Law Rep. 379, contains only a partial report.]

Francis B. Cutting, for libellants.
James T. Brady, for claimants.

NELSON, Circuit Justice. The direction of the coast where the collision in this case occurred, is nearly northeast and southwest, and the two vessels were moving along it in opposite directions. The wind was northwest, or west by north, and both vessels claim that they were closehauled, the Industry on the larboard, and the Thomas Martin on the starboard tack; and, at the same time, each insists that she was the privileged vessel, and that the other had the wind free. The Industry further insists, that she was bearing in a direction towards the land, so as to get into smooth water under a lee shore, and was, therefore, necessarily, from her course, closehauled. The Industry had a bright light on her fore rigging, and was seen by the hands on the Thomas Martin some fifteen minutes or more before the collision; and, as the combined speed of the two vessels was some ten or eleven miles an hour, the vessels must, at this time, have been between two and three miles apart. The Thomas Martin had no lights, and she was not discovered by the hands on the Industry till within a few minutes before the collision occurred. The night was cloudy, and the sky overcast, and, although there is some discrepancy as to the degree of darkness, it seems to be generally agreed, that a vessel without lights could not be discovered beyond half a mile. Several of the witnesses fix the distance considerably short of this. At the distance of half a mile, the two vessels, with their combined speed, would meet in some three minutes. Both vessels claim that, when they saw each other, the approaching vessel was to the leeward, and continued so till the moment of the collision. As a consequence of this impression, each, in the emergency, put her helm hard down, both luffing into the wind, and into each other. The better opinion is, that if one of the vessels had at that time borne away, and the other had put her helm hard down, the collision would have been avoided. Judge Judson, who heard the cause below, dismissed the libel, holding that the Industry was in fault in not putting her helm to port, instead of hard down, and bearing away before the wind. The learned judge arrived at this conclusion upon the application of the nautical rule, which is well settled, that when two sailing vessels are approaching each other, both having the wind free, and, consequently, the power of readily controlling their movements, the vessel on the larboard tack must give way, and each pass to the right; and the same rule governs vessels sailing on the wind, and approaching each other, when it is doubtful which one is to the windward.

I agree in this conclusion, as I am inclined to think, according to the evidence of the hands on the Industry, when properly weigh-

ed, that her position was such, in relation to the other vessel, that her helm should have been ported, and she should have passed to the right, instead of luffing into the wind, with the view of passing on the other side.

But I am unable to concur with the court below in the other branch of the case, namely, that the Thomas Martin was not in fault. I do not intend to disturb the general usage that prevails, both in narrow rivers and open seas, that sailing vessels are not bound to carry lights when under way at night. This usage has long prevailed, and has been recognized, to a certain extent, by the courts generally, in this country and in England. It was said, on the argument, that the rule had been recently changed in England by the Trinity masters. The soundness and propriety of the usage have often been questioned by eminent judges, both in England and this country. The fault chargeable upon the Thomas Martin is, I think, her neglect to show a light after she discovered the light of the Industry. If she had done so, there is every reason for believing that the collision would not have occurred. As I have already shown, the two vessels were at that time from two to three miles apart; and, within that distance, while running with the combined speed only of ten or twelve miles the hour, if each vessel had seen the other, it would have been strange if they could not have avoided the meeting. Although the night was not unusually dark, yet the sky was so overcast and cloudy, that it is admitted a vessel without a light could not be seen at a distance exceeding half a mile. While, therefore, the hands on the Thomas Martin had fifteen or more minutes' time, and the distance of some two and a half miles running, within which to adopt the proper measures for avoiding the Industry, the hands on board of the latter had only some three minutes' time, and half a mile's distance, within which to adopt the like measures.

The practice of showing lights when another vessel is seen approaching in a dark or cloudy night, is common among prudent and skilful navigators, and has frequently been made a subject of commendation by the courts, and been taken into consideration in determining cases of this description. Its fitness and propriety are too obvious to require illustration or argument. This case furnishes a striking exemplification of its necessity, and of the misfortune attending its neglect. The danger was impending almost at the moment the Thomas Martin was discovered by the Industry, and this from the neglect of the former vessel in not showing a light at the proper time.

I am also inclined to think the Thomas Martin in fault for racing with the schooner John Cunningham on that night. She had all her sails set, with a pretty fresh wind, and was running at a rate of speed, and under circumstances, that cannot well be justified, considering the character of the night. She had passed the Cunningham, and was some two miles ahead at the time, which the counsel for the claimants supposed put an end to the racing. But the struggle was to see which vessel could reach Norfolk ahead; and this accounts for all sails being kept set in the night, when most of the other vessels running the same course at the same time had taken in their light sails, in consequence of the freshness of the wind.

Upon the whole, I think both vessels in fault, and that the loss must be apportioned.